UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL E. CONKLIN,

          Plaintiff

   v.

PIKE COUNTY CORRECTIONAL
FACILITY, *et al.*,

          Defendants.

CIVIL ACTION NO. 3:26-CV-00750

(MEHALCHICK, J.)

**MEMORANDUM**

Michael E. Conklin, a pretrial detainee proceeding *pro se*, has filed a complaint concerning the medical care he has received at the Pike County Correctional Facility ("PCCF"). (Doc. 3). Pursuant to 28 U.S.C. § 1915A, the Court finds that Conklin's complaint fails to state a viable federal claim, but will permit him to amend the complaint before dismissing this case.

I.    BACKGROUND AND PROCEDURAL HISTORY

Conklin commenced this case by filing his complaint in the Eastern District of Pennsylvania. Because Pike County is within the boundaries of the Middle District of Pennsylvania, the court in that district transferred the case to this district. *See* (Doc. 5).

The complaint alleges as follows: Conklin suffers from asthma, requiring use of an inhaler multiple times per day, and has also been treated for opioid addiction. In April 2025, he began a prescription for Subutex as part of the PCCF's MAT program[1]. At some point

---

[1] Medication-assisted treatment ("MAT") generally refers to medication and other interventions for opioid use disorder. *See, e.g., DiFraia v. Ransom*, No. 24-2673, 2026 WL 878627, at *1 (3d Cir. Mar. 31, 2026).

prior to October 2025, he "inquired about" another medication, Sublocade, that he believed would help "keep [his] opioid addiction issues under control." He began receiving 300 milligram Sublocade injections on October 1, 2025.

On December 17, 2025, Conklin woke up shivering, short of breath, and feeling pain "across [his] shoulders and arms." He had a heart attack in 2016 and recognized these new symptoms "as the same [he] had in the past." Around 6:15 a.m., Conklin yelled to get the attention of officer Q. Smith, "described [his] symptoms[,] and asked [Smith] to get [him] medical attention." Smith allegedly responded: "If you can yell, you can breathe." At this point, "a call was made to medical with absolutely no urgency described in the matter."

At 6:40 a.m., Conklin's cell mates got the attention of Officer Smith, and "after another several minutes another call was made to medical . . . [with] slightly more urgency." Around 6:55 a.m., Conklin was released from his cell and permitted to walk to the medical department. He walked "short of breath and in pain," stopping several times to keep himself from vomiting. At 7:10 a.m., he arrived at the medical department. After an EKG test, medical staff called for an ambulance, and Conklin was given "nitroglycerin pills every 5 minutes until [his] vitals leveled out." He was taken to a hospital and discharged the following day, but does not say what diagnosis or treatment he ultimately received at the hospital.

Conklin believes he was treated with "due diligence" by the prison medical staff during this incident, but he attributes his sudden illness to the fact that he was taking Sublocade. He directs the Court to an information sheet about Sublocade, which indicates that it can cause breathing problems, and which advises: "Before starting SUBLOCADE, tell your healthcare provider about all your medical conditions, including . . . trouble breathing or lung problems." *See* (Doc. 3-1 at 1). He believes that he should "never have been given the [Sublocade]

injections at all. The same people treating me for my breathing issues should have been responsible for doing the research before allowing me to [receive] Sublocade."

Although Conklin does not identify specific legal claims, he appears to assert a claim against the prison medical provider, PrimeCare, "for pain and suffering resulting from medical providers administering a medication with life threatening side effects due to [underlying] conditions they were aware of"; claims against Smith and the PCCF premised on "gross negligence . . . in an obvious medical emergency"; and a claim against the PCCF "for not providing the proper training in these matters to their officers."

## II.    LEGAL STANDARDS

Under 28 U.S.C. § 1915A, the Court is obligated, prior to service of process, to screen a civil complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a); *James v. Pa. Dep't of Corr.*, 230 Fed. App'x 195, 197 (3d Cir. 2007). The Court must dismiss the complaint if it fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010). The Court has a similar obligation with respect to actions brought *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(2). In performing this mandatory screening function, a district court applies the same standard applied to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Mitchell*, 696 F. Supp. 2d at 471; *Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 588 (W.D. Pa. 2008).

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions

which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the amended complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the elements that make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions' . . . ." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need the court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting

4

*Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the amended complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

Conklin asserts that he brings this complaint under 42 U.S.C. § 1983. (Doc. 3 at 3). Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state and local officials. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To succeed on a Section 1983 claim, a plaintiff must demonstrate that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). "A defendant in a civil rights action must have personal involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence,'" and cannot be premised on the operation of *respondeat superior*. *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Rode*, 845 F.2d at 1207).

With these standards in mind, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can

5

only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Further, the Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

III.    DISCUSSION

A.  FOURTEENTH AMENDMENT

Because Conklin was a pretrial detainee at the time of this incident, any constitutional claim premised on the timing or adequacy of his medical care falls under the Fourteenth Amendment. To sustain a claim, Conklin would have to show that a defendant was deliberately indifferent to a serious medical need, and that he suffered harm as a result. *See Thomas v. City of Harrisburg*, 88 F.4th 275, 281 (3d Cir. 2023). Courts have found deliberate indifference "in a variety of circumstances, including where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

By these standards, Conklin has not stated a Fourteenth Amendment claim against any defendant. He objects to the decision of unspecified medical staff to prescribe him Sublocade at his request, but he has not described the circumstances in sufficient detail to suggest deliberate indifference. Assuming the staff who prescribed Sublocade were aware of his asthma and breathing issues, the bare fact that Sublocade *could* exacerbate such issues does

not show that they were deliberately indifferent for prescribing it. *See*, *e.g.*, *Gardner v. Malik, No. 3:24-CV-1843, 2024 WL 4592350, at *3 (M.D. Pa. Oct. 28, 2024)* ("Prescribing medications with potential side effects does not necessarily amount to deliberate indifference to serious medical needs."); *Walker v. CHCA Merritt-Scully, No. 3:21-CV-2167, 2022 WL 17477121, at *3 (M.D. Pa. Dec. 6, 2022)*. Conklin believes that he "should have been counseled more diligently and directly" about side effects, but this vague allegation does not support an inference that anyone was deliberately indifferent to his safety. *See*, *e.g.*, *Jetter v. Beard, 130 F. App'x 523, 526 (3d Cir. 2005)* (an alleged failure to inform a patient of potential side effects does not itself suggest deliberate indifference). Nor is it clear that his sudden December 17 illness was caused by Sublocade, which he had been taking since October 1. Conklin does not explain what his ultimate diagnosis was or how he concluded that Sublocade was to blame for this incident.

The complaint does not state a Fourteenth Amendment claim against Smith, the officer who interacted with Conklin on December 17. Conklin alleges that he was shivering, short of breath, and suffering pain in his shoulders and arms, and described these symptoms to Smith, who immediately called the medical department. Conklin does not allege that Smith failed to apprise the medical staff of his symptoms; rather, he vaguely faults Smith for a lack of "urgency" in his report. Smith, a non-medical officer, was entitled to rely on the judgment of the medical staff as to whether Conklin's symptoms warranted urgency. *See Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004)* (deference to medical staff on medical issues is part of "the division of labor within a prison"). Conklin believed his symptoms were consistent with a heart attack based on his prior experience, but he does not allege that he explained this to Smith or that Smith knew anything about his medical history. Thus, while the comments

Conklin attributes to Smith are unpleasant, the complaint does not plausibly suggest that Smith believed Conklin required emergency care and deliberately delayed it.

To assert constitutional claims against the PCCF or its private medical provider, PrimeCare, Conklin would have to plead facts suggesting that a "policy or custom" of these entities inflicted the injury in question. *See Montanez v. Price*, 154 F.4th 127, 142 (3d Cir. 2025) (citing *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978)). In other words, he cannot assert constitutional claims against them by complaining about errors of individual staff members. The appropriate defendants for that kind of claim would be the individuals that he believes mistreated him. He asserts a claim against the PCCF based on allegedly improper training of officers, but he does not describe how the training was inadequate or how the alleged flaws in training caused any of the issues he describes. A plaintiff must plausibly describe an "affirmative link" between the policy or custom and the alleged violation (*Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019)); he cannot state a constitutional claim against a municipal entity by vaguely ascribing the actions of individual employees to improper training.

B. STATE LAW CLAIMS

When a federal court dismisses all federal claims prior to trial, it "must decline" to exercise jurisdiction over state law claims "unless considerations of judicial economy, convenience, and fairness to the parties" dictate otherwise. *See Talley v. Clark*, 111 F.4th 255, 266 n.6 (3d Cir. 2024) (quoting *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000)); 28 U.S.C. § 1367(c). There is no viable federal claim apparent in Conklin's complaint, so the Court declines to exercise jurisdiction over any state law claim at this early stage, without prejudice to any future evaluation of an amended complaint.

8

Further, to the extent Conklin intended to plead a state law negligence claim premised on officers' alleged "gross negligence . . . in an obvious medical emergency," he has not explained how the emergency was "obvious" to the non-medical officers, or why their duty was not satisfied by reporting his symptoms to medical personnel and relying on their judgment. However, Conklin will be permitted to file an amended complaint to clarify his allegations.

**IV.    CONCLUSION**

Because Conklin's complaint does not state a viable federal claim for relief, but amendment may not be futile, he will be permitted to file an amended complaint. *Grayson, 293 F.3d at 108*. The amended complaint must stand by itself without reference to the original complaint. *See Young v. Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992). Conklin may attach medical records or other documents if they are helpful in explaining his claims.

An appropriate order follows.

Dated: April 9, 2026                                   *s/ Karoline Mehalchick*
                                                          **KAROLINE MEHALCHICK**
                                                          **United States District Judge**

9